IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MIGUEL ANGEL RIVERA,

   Plaintiff,

v.                                       Civil Action No.:  PX-22-1517

DIRECTOR WAYNE O. HILL, *et al*.,

   Defendants.

**MEMORANDUM OPINION**

Plaintiff Miguel Angel Rivera, an inmate at Dorsey Run Correctional Facility, filed a civil rights Complaint pursuant to 42 U.S.C. § 1983, and thereafter amended and supplemented his Complaint.  ECF Nos. 7, 8.  The Court previously determined that the claims in the Amended Complaint failed as a matter of law.  *Id.*  But because Rivera proceeds pro se, the Court granted him the opportunity to amend the pleading to cure the defects identified.  *Id.*  The Court also forewarned Rivera that the Second Amended Complaint would replace the current Amended Complaint.  *See Young v. City of Mt. Ranier*, 238 F.3d 567, 572 (4th Cir. 2001) (citations omitted).

Rivera timely filed the Second Amended Complaint, ECF No. 11, which the Court now reviews for sufficiency.  *See* 28 U.S.C. § 1915A.  The Court gives the second Amended Complaint a liberal reading, construing all facts as true and in the light most favorable to Rivera.  *See White v. White*, 886 F.2d 721, 722-23 (4th Cir. 1989).  However, for the reasons discussed below, the claims still fail as a matter of law and must be dismissed.

**I.**    **Background**

The Second Amended Complaint involves Rivera's incarceration at Jessup Correctional Institution ("JCI") and Western Correctional Institution ("WCI"), and names eleven individual

Defendants across the two institutions. ECF No. 11. For the JCI-related claims, Rivera names as defendants Warden Allen Gang, Sargent Messon, Sargent Lee, Sargent Lepa, Officer Jackson, Officer Asongoing, Case Manager Ms. Truitt, and Dr. Electra A. Awanga. *Id*. For the WCI-related claims, Rivera names Warden Ronald Weber, Case Manager Corey Walker, and Officer Zembower. *Id.*

According to the Second Amended Complaint, on March 1, 2019, an inmate attacked Rivera at JCI, inflicting such serious injury that Rivera had to be hospitalized. ECF No. 11 at 3. When Rivera returned to JCI, he was placed in administrative segregation for several months without the prison performing any review of the placement. *Id*. On numerous occasions, Rivera asked Defendant Truitt, his case manager, about the status of this review, but she did not give a meaningful response. *Id*. at 3-4. Truitt also met with Rivera and evidently "ordered Rivera put in writing that he does not have any fear for his life, and that he preferred to "be on the compound." *Id*. at 4. Thereafter, Rivera was returned to "the compound." *Id.*

While in segregation, Rivera experienced infestations of cockroaches, ants, and spiders in his cell, and once found a cockroach in his lunch. *Id.* at 4. He complained to Defendant Officers Jackson, Asongoing, Messon, Lee, and Lepa, but JCI took no remedial action. *Id*. at 4-5. Rivera also attempted to file an inmate grievance, giving the completed forms to Defendants Lee and Lepa, but he never received a copy of the filed forms in return. *Id.* at 5. Also while at JCI, Defendant Dr. Electra A. Awanga prescribed a medication that made Rivera's stomach hurt and caused other digestive problems. *Id.* at 3.

On November 8, 2019, Rivera was transferred to WCI. *Id*. at 6. Rivera speculates that Defendant Warden Gang authorized the transfer because he was "pissed off" at Rivera. *Id*. at 6. On arrival at WCI, Rivera was placed in a cell with an inmate named "Michael," who sexually

2

assaulted and harassed him. *Id.* at 6. On November 22, 2019, Rivera communicated the assault to Defendant Zembower. *Id.* Rivera also refused to return to the cell with Michael, and as a result, received a "ticket" and was taken to "lock up" until November 24, 2019, when he was returned to the cell. Michael had been moved elsewhere. *Id.* Rivera appealed his disciplinary "ticket" to Defendant Warden Weber, but the appeal was "ignored." *Id.* at 7-8. Rivera also communicated to his case manager, Defendant Corey Walker, his concerns surrounding Michael and was directed to write a statement. Walker reported the incident pursuant to the Prison Rape Elimination Act. *Id.* Rivera further informed Walker that his "enemies" are housed at WCI, but Walker responded that Rivera does not have any "documented enemies." *Id.* at 6.

## II. Analysis

The Second Amended Complaint avers that (1) Rivera received constitutionally inadequate medical treatment from Dr. Awanga; (2) his transfer from JCI to WCI was retaliatory; (3) and his placement in segregation at JCI without review, and WCI's mishandling of Rivera's sexual assault, violated his Eighth Amendment right to be free from cruel and unusual punishment. The Court addresses each claim separately.

### A. Constitutionally Adequate Medical Care

The Eighth Amendment to the United States Constitution protects inmates from receiving constitutionally inadequate medical care. To state a plausible claim, the plaintiff must aver sufficient facts to show that a defendant delayed or denied his care with deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "Deliberate indifference is a very high standard – a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695- 96 (4th Cir. 1999). It requires proof that, objectively, the prisoner was suffering from a serious medical need and that, subjectively, the prison staff, aware of prisoner's need, failed

3

to either provide such care or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016). "A medical condition is shown as objectively serious when it would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Formica v. Aylor*, 739 Fed Appx. 745 (4th Cir. 2018) (internal quotation marks and citations omitted). As to the subjective prong, the complaint must plausibly state that the defendant had "knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844).

The Second Amended Complaint avers solely that Dr. Awanga had prescribed Rivera medication which upset his stomach, and upon his transfer to another facility, Rivera received different medication. ECF No. 11 at 3. Even accepting these facts at true, nothing makes plausible that Dr. Awanga prescribed the offending medication with deliberate indifference or that Rivera's upset stomach is a sufficiently serious medical need. Accordingly, the Second Amended Complaint fails to make plausible that Rivera had been denied constitutionally adequate medical care. The claim must be dismissed.

### B. Transfer from WCI to JCI as "Retaliatory"

Next, Rivera avers that he had been transferred to JCI because Defendant Warden Gang was "pissed off" at him. Specifically, a member of Rivera's transport commented that Rivera "must have pissed someone off," and so, Rivera surmises that the transfer must have been

retaliatory because Rivera was moved to a prison with "knowing [sic] enemies" and was assigned a cellmate with a [disciplinary] record." *Id.* at 8.

Generally, a prisoner does not retain a constitutional right to serve his sentence at a particular prison absent a showing of significant hardship. "[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution." *Meachum v. Fano*, 427 U.S. 215, 224 (1976); *see also Sandin v. Conner*, 515 U.S. 472 (1995) (requiring an atypical and significant hardship as prerequisite to creation of a constitutionally protected liberty interest). No facts have made plausible that Rivera's transfer resulted in such atypically harsh conditions to rise to the level of a constitutional violation.

As to the claim of retaliatory transfer, the Second Amended Complaint fails to aver that the claimed adverse action had been taken in response to the exercise of a constitutionally protected right. *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). The naked assertion that Rivera had been moved because Defendant Warden Gang may have been "pissed off" does not suffice. Accordingly, this claim too must be dismissed.

### C.  Segregation – Unconstitutional Confinement Conditions

The Second Amended Complaint next takes issue with Rivera's placement in segregation without administrative review. ECF No. 11 at 3. To make plausible an unconstitutional conditions of confinement case, the Second Amended Complaint must aver some facts that the placement "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 484. The pleading fails in this regard. Although Rivera asked his case manager for the status of any such review, that alone does not render his placement so

atypical or comparatively draconian so to set it apart from the ordinarily harsh conditions of prison. Likewise, the bug infestations, while undoubtedly unpleasant, do not alone plausible that Rivera had been subjected to sufficiently harsh and atypical confinement conditions. This claim, too, must be dismissed.

### D. Failure to Protect – Sexual Harassment

Lastly, the Second Amended Complaint avers that Rivera's injuries suffered at the hands of his cellmate, "Michael," arose because the Defendants failed to make reasonable efforts to protect him from harm. *See Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016) (citing *Farmer*, 511 U.S. at 832). Although inmates enjoy constitutional protection from unnecessary and wanton infliction of harm, not every "injury suffered by a prisoner at the hands of another" amounts to a constitutional violation. *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015). Rather, the complaint must aver that the prisoner suffered both "a serious or significant physical or emotional injury," *Danser v. Stansberry*, 772 F.3d 340, 346–47 (4th Cir. 2014), and that defendants failed to protect the prisoner with "a sufficiently culpable state of mind" amounting to "deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. at 834. Where the risk to inmate safety was "obvious," such deliberate indifference may be inferred. *Raynor*, 817 F.3d at 128.

Reading the Second Amended Complaint most favorably to Rivera, it fails to make plausible that Defendants had any advance knowledge that Michael would assault Rivera. Michael's nondescript "disciplinary record" alone does make plausible that Defendants knew in advance of the potential danger Rivera faced. Thus, although the attack is troubling, no facts make plausible that Defendants deliberately or recklessly failed to keep Rivera safe. This claim is dismissed.

### III. Conclusion

Rivera has been afforded multiple opportunities to present his claims before this Court. *See* ECF Nos. 1, 7, 8, 11. However, as explained, the claims set forth in the Second Amended Complain fail as a matter of law and are dismissed without prejudice.[2]

A separate Order follows.

| | |
|---|---|
| 12/19/22 | /S/ |
| Date | Paula Xinis<br>United States District Judge |

---

[2] On November 28, 2022, Rivera filed a Motion for Production of Documents (ECF No. 13), and on December 2, 2022, a Motion to Compel Discovery, ECF No. 14. Because his Complaint will be dismissed for the reasons stated in this memorandum, the Court denies these motions as moot.